**UNITED STATES of America, Plaintiff,**

v.

**Augustine A. OGUNBIYI a/k/a David S. Jones, and Thaddeus J. Wright, Defendants.**

**Criminal No. 3:95CR8.**

United States District Court,
N.D. West Virginia.

March 6, 1997.

Thomas O. Mucklow, Assistant United States Attorney, Wheeling, WV, for U.S.

Matthew Fair, Elkins, WV, for Ogunbiyi.

Scott Curnutte, Elkins, WV, for Wright.

## *ORDER*

MAXWELL, District Judge.

By Orders entered May 6, 1996, and September 6, 1996, the Court referred the pretrial motions in the above-styled criminal action to United States Magistrate Judge David L. Core, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), with directions to conduct any necessary hearings in determin-

ing the motions or in preparation for submission of proposed findings of fact and recommendation for disposition.

On August 16, 1996, Magistrate Judge Core filed his Proposed Findings of Fact and Recommendation for Disposition as to defendant Ogunbiyi, in which he recommends that the Court grant defendant Ogunbiyi's motion to suppress evidence seized during a routine traffic stop. On October 28, 1996, Magistrate Judge Core filed his Proposed Findings of Fact and Recommendation for Disposition as to defendant Wright, in which he recommends that the Court grant defendant Wright's motion to suppress.

The United States filed objections to each of the Magistrate Judge's reports. On December 3, 1996, the Court conducted a hearing for the purpose of hearing any additional evidence on the motions and objections and to hear oral argument. No additional testimony was submitted. Following the hearing, the defendants filed separate response memoranda to the United States' supplemental objections addressing the applicability of the recent Supreme Court decision in *Ohio v. Robinette*, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

By Order entered January 22, 1997, the Court permitted counsel for defendant Ogunbiyi to withdraw and appointed Franklin D. Cleckley to represent defendant Ogunbiyi in this matter. The Court provided newly-appointed counsel with an opportunity to supplement the record with regard to defendant Ogunbiyi's Motion to Suppress and the Objections which had been filed by the United States to Magistrate Judge Core's Proposed Findings of Fact and Recommendation for Disposition. The Court has now been advised by newly-appointed counsel for defendant Ogunbiyi that counsel has completed his review of the matter and that further supplementation of the record is not necessary.

The Court has reviewed the record before it and has conducted a *de novo* review of all matters before the Magistrate Judge in considering the motions to suppress.[1] It

---

1. The Court has studied the transcripts from the February 1, 1996 detention hearing, the July 1, 1996 suppression hearing involving defendant Ogunbiyi, and the September 17, 1996 suppression hearing involving defendant Wright. The Court has also carefully studied the videotape of

appears to the Court that the Proposed Findings of Fact and Recommendation for Disposition accurately reflects the law applicable to the facts and circumstances before the Court in this present criminal action. The United States' objections have not raised any issues which were not thoroughly and accurately considered by Magistrate Judge Core in his Proposed Findings of Fact and Recommendations for Disposition.

▐ The Court adopts the facts set forth on pages 2–6 in the Magistrate Judge's Proposed Findings which he filed on August 16, 1996. The Court believes that the factual findings are critical to the outcome of this case and believes that they should be restated herein:

As background, the defendant and his co-defendant, Thaddeus Wright, were traveling from New Jersey to Martinsville, Virginia on October 23–24, 1995. At approximately, 1:50 a.m. on October 24, they entered West Virginia traveling south on Interstate 81. Trooper Tim Mayle, of the West Virginia State Police was patrolling Interstate 81 in Berkeley County when he observed the defendant's vehicle, traveling 53 mph, coming into West Virginia. At the time, Mayle was traveling through the "cross-over" in the median. Trooper Mayle became suspicious of the slow speed and suspected a possible driving under the influence situation; thus, he pulled onto the interstate and followed the defendant. The officer observed the defendant weave back and forth, go off the berm on at least two occasions and continue to drive below the posted speed limit. The officer activated his blue lights and pulled Ogunbiyi over to investigate the DUI.[2] At 2:00:22 a.m., Trooper Mayle approached the defendant's vehicle and requested a driver's license and vehicle registration. Ogunbiyi did not have any identification with him, but informed the officer he had a learner's permit through the State of New York. The passenger Thaddeus Wright provided Mayle with his driver's license. The regis-

tration and license plate indicated the vehicle was a rental vehicle.

Trooper Mayle then asked Ogunbiyi to exit the vehicle and return to the cruiser with him. Ogunbiyi complied. Prior to entering the cruiser, Trooper Mayle conducted a "pat down" search of Ogunbiyi for weapons.

Once in the cruiser, an audio tape was turned on and there is a voice recording of what transpired. At approximately 2:01 a.m., Trooper Mayle informed Ogunbiyi that he would only receive a warning ticket. The officer asked Ogunbiyi for identifying information, including his full name, date of birth and address so that he could verify that Ogunbiyi had a valid learner's permit. The officer also inquired as to Ogunbiyi's travel plans.

At 2:03:21, the officer called the dispatcher to run a license check and a criminal history check on both Ogunbiyi and Wright. At 2:05:21, the officer approached Wright, who was still in the car, and requested a copy of the rental agreement which was promptly provided. Although Ogunbiyi was not listed as an authorized driver on the agreement, Wright was listed. Upon Mayle explaining the rental company's typical response of requesting impoundment of a vehicle when an unauthorized driver is driving, Wright offered to drive. In response, Officer Mayle said, "That's okay. I know you are tired."

At 2:06:45, the license check revealed that Wright had a valid Virginia driver's license. At 2:07:58, Mayle was provided with confirmation that Ogunbiyi possessed a valid New York learner's permit. At 2:09:26, Officer Mayle informed Ogunbiyi again that he would receive only a warning ticket. It is unclear from the tape whether Trooper Mayle actually handed Ogunbiyi a copy of the warning at this time. Nevertheless, the detention continued while Mayle waited for the results of the criminal history checks. During this period,

the traffic stop which has been made a part of the record as an exhibit to defendant Ogunbiyi's Motion to Suppress.

2. Once the officer activated his blue lights, the in-car video camera was automatically turned on, thereby, providing us with the benefit of a video recording of the events which transpired at the stop.

Mayle initiated and engaged in several topics of discussion with Ogunbiyi. At 2:12:45, Mayle was informed that Thaddeus Wright had a criminal history including charges of brandishing and shoplifting.[3] The conversation between Ogunbiyi and Mayle continued further while the dispatcher was continuing his criminal history check on Wright and Ogunbiyi. At 2:15:47, Mayle stated he noticed Wright had a prior brandishing charge and asked whether there were any weapons in the car. Ogunbiyi responded "no". At 2:16:23, Mayle learned that Wright had no further criminal history. At 2:16:46, the criminal history check was clear on Ogunbiyi. When the records checks were final, Mayle said to Ogunbiyi, "there you go, it's only a warning ticket". Then, instead of informing Ogunbiyi that he was free to go and allowing him to exit the cruiser, Mayle asked Ogunbiyi if he minded if he took a quick look through the car for weapons. Ogunbiyi was hesitant, and at 2:17:05, Trooper Mayle stated he would ask the passenger for consent to search since he was the authorized driver. Trooper Mayle exited the cruiser, instructed Ogunbiyi to wait in the car, and proceeded to the vehicle when at 2:17:30, he asked Wright if he had any objection to a quick search of the vehicle. In requesting consent, Trooper Mayle told Wright that he noticed he had a prior brandishing charge and asked if he was carrying any weapons. It is unclear from the tape whether Wright consented to the search, but Mayle did instruct Wright to exit the vehicle and move back by the police cruiser. Mayle said, "I'll be done in just a second." This occurred a [sic] 2:17:54.

Mayle found nothing in his search of the interior of the car. He then opened the trunk and picked up a duffle-type bag, which he described as having "some weight" to it. When Mayle began to unzip the bag to search it, Ogunbiyi approached him and informed him that the bag was his and he did not have permission to search it. The officer dropped the bag and informed Ogunbiyi that he would call a dog to do a "sniff" search. Mayle returned to his car and radioed for the dog. As they were waiting for the dog to arrive, Ogunbiyi asked if he was free to leave. Mayle responded affirmatively; however, he stated that he could not walk on the interstate and that Trooper Porter, who had arrived at the scene, would have to transport him. A discussion ensued about whether Ogunbiyi could take his bag with him and when he would be able to leave. Mayle stated he could leave once the officer with the dog arrived. Shortly thereafter, Mayle instructed Ogunbiyi to place the bag back into the trunk of the car.[4] Ogunbiyi proceeded to the trunk as if he were going to comply with the order, but instead he fled. Trooper Porter proceeded after him but failed to capture Ogunbiyi. However, Trooper Porter retrieved a plastic bag containing a new tennis shoe and a plastic bag containing 499 grams of cocaine.

Proposed Findings of Fact and Recommendation for Disposition filed August 16, 1996, at pages 2–6.

A one-count Indictment was returned by the Grand Jury on November 29, 1995, charging the defendants with aiding and abetting possession with intent to distribute 499 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The defendants seek to suppress the 499 grams of cocaine which was retrieved by Trooper Porter.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In analyzing

3. At both the detention hearing (Tr. 8) and the suppression hearing (Tr. 18), Trooper Mayle testified that the criminal history check on Wright included a drug or narcotic violation. In multiple reviews of the videotape, I was unable to hear any reference to such a violation. I think it is also noteworthy that Trooper Mayle made no reference to, or inquiry about, whether there were any drugs in the car when seeking consent to search—his only reference was to the reported brandishing charge.

4. Ogunbiyi was permitted to retain possession of the duffel bag a short time while on the side of the road while the officers waited for the dogs to arrive.

a fourth amendment claim, the Court must first address whether either or both of the defendants in question had a reasonable expectation of privacy in the area searched or the item seized. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 140–150, 99 S.Ct. 421, 428–434, 58 L.Ed.2d 387 (1978). The defendants bear the burden of proving that they had a reasonable expectation of privacy in the area searched or the item seized. *Rakas,* 439 U.S. at 131, n. 1, 99 S.Ct. at 424, n. 1; *Simmons v. United States,* 390 U.S. 377, 389–390, 88 S.Ct. 967, 973–974, 19 L.Ed.2d 1247 (1968). If either of the defendants did have such an expectation, then the court must determine the reasonableness of the search and seizure as to that defendant.

Individuals have a reduced expectation of privacy in motor vehicles due to the high level of regulation to which they are subject. *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2069–2070, 85 L.Ed.2d 406 (1985). The Government does not contest that, as an authorized driver of the rental vehicle, defendant Wright had a reasonable expectation of privacy in the car and its contents, and, therefore, has standing to challenge the search of the rental vehicle.

As to defendant Ogunbiyi, the law is settled in this Circuit that an unauthorized driver of a rental vehicle has no legitimate expectation of privacy in the vehicle and is, therefore, without standing to challenge a search of the vehicle. *U.S. v. Wellons,* 32 F.3d 117 (4th Cir.1994).[5] Even though defendant Ogunbiyi cannot challenge the search of the rental vehicle, he can challenge his own seizure and detention. *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–2579, 45 L.Ed.2d 607 (1975); *U.S. v. Rusher,* 966 F.2d 868, 874 n. 4 (4th Cir.1992).

As is now generally recognized, "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments,

even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, (1979). An ordinary traffic stop is, however, a limited seizure more like an investigative detention than a custodial arrest. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–3150, 82 L.Ed.2d 317 (1984).

In *Rusher,* the Fourth Circuit employed the Supreme Court's analysis for investigative detention used in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to determine the limits of police conduct in routine traffic stops. This approach presents a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. If the initial traffic stop was illegal or the officers exceeded the stop's proper scope, the seized contraband is excluded under the "fruit of the poisonous tree doctrine." *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–416, 9 L.Ed.2d 441 (1963).

In *Rusher,* the Fourth Circuit sets forth an officer's proper investigative scope for a routine traffic stop. The officer:

> may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*U.S. v. Rusher,* 966 F.2d at 876, *quoting, United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988) (citations omitted). Any further detention for questioning is beyond the scope of the Terry stop and, therefore, illegal unless the officer has a reasonable suspicion of a serious crime. *See, Florida v. Royer,* 460 U.S. 491, 498–499, 103 S.Ct. 1319,

---

**5.** The facts of the instant case are quite different from *Wellons,* however. Unlike *Wellons,* the authorized driver was present in the car but was unable to drive because he was too drowsy. The Court does believe that such a situation should

be analyzed differently from one in which an individual is driving a stolen or borrowed vehicle; however, in light of the Court's ultimate conclusion, it is unnecessary for the Court to decide this question.

1324–1325, 75 L.Ed.2d 229 (1983); *United States v. Brignoni–Ponce*, 422 U.S. at 881–882, 95 S.Ct. at 2580–2581.

After careful consideration of all the facts and applicable law, the Court finds that the Magistrate Judge's conclusions in both proposed Findings of Fact and Recommendation for Disposition are entirely accurate. The Court finds that Trooper Mayle did not end his detention of Ogunbiyi before seeking consent to search from him and then Wright; Trooper Mayle illegally detained defendant Ogunbiyi after he issued the warning citation to him; Trooper Mayle did not have reasonable suspicion of criminal activity at the time he sought consent to search the vehicle nor after he discovered the bag in the trunk and defendant Ogunbiyi advised him that he did not have consent to search the bag; and it has not been shown that defendant Wright gave free and voluntary consent to the search of the vehicle.[6]

On one final note, on November 27, 1996, the United States submitted a supplemental objection in which it addresses the recent Supreme Court case of *Ohio v. Robinette*, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). While the case is instructional, it is not dispositive. The defendants in this case have not claimed that Trooper Mayle was required to advise them they were free to go before requesting permission to search the car. Neither the Court nor the Magistrate Judge has adopted a "bright-line" rule requiring an officer to advise a defendant that he is free to go. Rather, in accordance with *Schneckloth v. Bustamonte*, the Magistrate Judge and the Court have examined the totality of the circumstances surrounding the alleged consent. Accordingly, it is

**ORDERED** that the objections and supplemental objections of the United States to the Proposed Findings of Fact and Recommendations for Disposition are **OVERRULED**. It is further

6. According to the Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854 (1973), consent is an issue of fact, and a determination of whether a particular consent is truly voluntary is made by examining the totality of the circumstances surrounding the consent. The Magistrate Judge has done

**ORDERED** that defendant Wright's and defendant Ogunbiyi's separately filed Motions to Suppress be, and the same are hereby, **GRANTED**. It is further

**ORDERED** that the Clerk of Court shall forward a copy of this Order to counsel of record.

an excellent job of examining the totality of the circumstances, and the Court expressly adopts his conclusion that a reasonable person would not have felt free to decline Trooper Mayle's request to search the rental vehicle or to terminate the encounter.